UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael L. Parker; and<br>Robert J. Parker, Sr., | ) C/A No. 4:13-00430-MGL-KDW<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) REPORT AND RECOMMENDATION<br>) |
| William O. Spencer, Jr.;<br>Joseph Kershaw Spong;<br>Robinson, McFadden, & Moore, P.C.;<br>Green Tree Servicing LLC;<br>Walter Mortgage Company LLC; and<br>J. Michael Baxley, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

Plaintiffs,[1] Michael L. Parker and Robert J. Parker, Sr., each representing himself, filed this civil rights action pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988, claiming violation of their "civil rights and/or liberties" based on the "national Constitution." Am. Compl. 1, ECF No. 22. Both Plaintiffs are proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e), D.S.C, which provides that all pretrial proceedings involving litigation by individuals proceeding pro se be referred to a United States Magistrate Judge.

I.  **BACKGROUND**

   A.  **Standard of Review**

Plaintiffs filed their pleadings pursuant to 28 U.S.C. § 1915, which permits an indigent

---

[1] Both of the plaintiffs are referred to as "Plaintiffs" herein, except when distinction is required, in which case they are referred to as "R. Parker" or "M. Parker."

litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Pro se complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *Erickson v. Pardus*, 551 U.S. 89 (2007). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *De'Lonta v. Angelone*, 330 F.3d 630, 630 n.1 (4th Cir. 2003). Even under this less stringent standard, the Amended Complaint filed in this case is subject to summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B), which requires the court to dismiss a case in which a litigant seeks to proceed *in forma pauperis* at any time the court determines the action fails to state a claim on which relief may be granted. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) (noting requirement of liberal construction does not mean court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court).

### B. Plaintiffs' Factual Allegations

Plaintiffs filed a Complaint, ECF No. 1, that they subsequently replaced with an Amended Complaint, ECF No. 22, against two state court judges, a private attorney, a law firm, and two corporations involved in the mortgage industry. The pleadings reference and summarize a real estate foreclosure action litigated in state court in Chesterfield County, South Carolina, *U.S. Bank, N.A.,*

*et al. v. Parker*, *et al.*, C/A No. 2012-CP-13-438 ("the Foreclosure Action," sometimes referred to by Plaintiffs as "Case #438"). Plaintiffs' present allegations arise from, and are directly related to, the Foreclosure Action.

Plaintiffs' Amended Complaint references 42 U.S.C. §§ 1983, 1985, 1986, and 1988 as the bases for their causes of action, and includes a "FACTS" section containing subsections with factual allegations summarizing what Plaintiffs characterize as "frauds" by Defendants connected to the Foreclosure Action. Am. Compl. 1, 3-7, ECF No. 22. In outlining the alleged Facts, Plaintiffs characterize the "1st Fraud" as "Lenders did not honor discharge of the mortgage debt." *Id.* at 3. Plaintiffs contend that their mortgage debt with Defendant Walter Mortgage "was lawfully and legally discharged" and submit that none of Defendant Walter Mortgage's "merged successors" had any valid claim to foreclose on Plaintiffs' house and land. Am. Compl. 3. Plaintiffs submit the mortgage debt to Walter Mortgage "was originally satisfied almost one year prior to the foreclosure sale." *Id.* Plaintiffs aver they "caused proper tender of payment to be made by presentment, and acceptance," and submit Walter Mortgage's failure to respond indicated their "silence [was] acquiescence." *Id.* at 4. Plaintiffs explain they effected the attempted discharge of the mortgage by sending a "Discharge Instrument to the Internal Revenue Services (I.R.S.)" that included information listed in the Amended Complaint, and that the "entire process was carried out lawfully and legally" in compliance with various Uniform Commercial Code (U.C.C.) forms. *Id.* at 3-4. When neither the I.R.S. nor Walter Mortgage acknowledged the discharge of the mortgage debt, Plaintiffs mailed a "Lawful Notification" letter to Walter Mortgage by certified mail. *Id.* at 4. Plaintiffs submit Walter Mortgage "accepted" the letter by signing for it on the return receipt. *Id.* Walter Mortgage did not respond to the letter. Citing a portion of their Notification Letter, Plaintiffs allege Walter Mortgage's

"silence is acquiescence." *Id.*

Plaintiffs similarly detail a second purported discharge of the mortgage debt that they provided to Defendant Green Tree, along with various documents and an Electronic Funds Transfer (EFT) instrument. Am. Compl. 4-5. Plaintiffs submit that Green Tree "accept[ed]" the EFT by signing for the certified letter; however, Plaintiffs acknowledge Green Tree informed them that it had not accepted the check issued by Plaintiff R. Parker "'because the offer to pay less than the full amount has been denied.'" *Id.* at 5. Plaintiffs submit, though, that, although Green Tree mistakenly called their tendered EFT instrument a "check," Green Tree did not return the EFT. Accordingly, Plaintiffs aver Green Tree "accepted" their tender of payment, thereby satisfying Plaintiffs' mortgage debt to Green Tree. *Id.* In addition, Plaintiffs reference having sent a "Notification Letter" to Green Tree, to which Green Tree has not responded. They argue Green Tree's silence is acquiescence, further indicating the court should recognize the discharge of the mortgage debt. *Id.* at 5-6.

Then, Plaintiffs describe their "[t]hird discharge of the mortgage debt," explaining that discharge involved Plaintiff M. Parker's mailing another EFT instrument, labeled as being for discharge of debt, directly to Defendant Walter Mortgage. *Id.* at 6. Again, Plaintiffs aver the discharge was "accepted" when Walter Mortgage signed for the certified letter that contained the EFT and submit Walter Mortgage did not return the EFT, nor did it respond to the "Notification Letter." *Id.* at 6-7.

Plaintiffs submit that Defendants Walter Mortgage and Green Tree should be required to produce both of the EFT instruments "as evidence they were not processed." *Id.* at 7. If the EFTs are not produced, Plaintiffs submit "the only other reasonable conclusion is that the EFTs were

processed and "Walter Mortgage and Green Tree received full payment twice for satisfaction" of M. Parker's mortgage debt. *Id.*

Plaintiffs also discuss an alleged "2nd Fraud - Because of who the sovereign Plaintiffs are." Am. Compl. 7-8. Plaintiffs describe themselves as "Christians, true sovereign Electors," and submit that "the only manmade laws binding to the sovereign Plaintiffs is the 'lawful, therefore genuine' national Constitution." *Id.* at 7. In this portion of their Amended Complaint, Plaintiffs submit that the state court's and the mortgage companies' rejection of their positions regarding the discharge of their mortgage debt through use of "their South Carolina rules and codes with trickery and fraud" constituted fraud and it violated their rights to use a "Presidentially approved substitute money system." *Id.* at 7-8.[2] Plaintiffs note neither the IRS, nor mortgage holders, Defendants Walter Mortgage and Green Tree, has "honored satisfaction of the mortgage debt," and note that Green Tree initiated a lawsuit against M. Parker instead. *Id.* at 8. Plaintiffs claim Green Tree had no valid claim to the house or land. *Id.*

Plaintiffs also set out a "3rd Fraud - No Trial by Jury as Instructed and Demanded," in which

---

[2] Plaintiffs' use of such language indicates their affiliation with the "loose network of individuals living in the United States who call themselves 'sovereign citizens' and believe that federal, state, and local governments operate illegally." Fed. Bureau of Investigation, "Sovereign Citizens: A Growing Domestic Threat to Law Enforcement," (Sept. 2011), http://www.fbi.gov/stats-services/publications/law-enforcement-bulletin/september-2011/sovereign-citizens (last visited Oct. 17, 2013). As explained by the FBI, a "prevalent 'sovereign-citizen theory . . . claims the U.S. government went bankrupt when it abandoned the gold standard basis for currency in 1933 and began using citizens as collateral in trade agreements with foreign governments." *Id.* "Sovereign citizens file legitimate IRS and Uniform Commercial Code forms for illegitimate purposes, believing that doing so correctly will compel the U.S. Treasury to fulfill its debts, such as credit card debts, taxes, and mortgages." *Id. See United States v. Ulloa*, 511 F. App'x 105, 106 n.1 (2d Cir. 2013) (noting "[t]he sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior."

5

they allege "officers of the court"–Defendants Spencer, Spong, and Baxley–violated their Seventh Amendment right to a trial by jury. *Id*. at 8-9. Plaintiffs submit the "administrative court," presumably the state court that handled the Foreclosure Action, was "the wrong jurisdiction" for M. Parker, and that the state court ignored M. Parker's counterclaim and instruction for a jury trial. *Id.*

Plaintiffs' alleged "4th Fraud - Material Facts filed in Case # 438," concerns argument that Defendants Spencer and Spong ignored the material facts about their discharge attempts and other dealings with the mortgage companies that Plaintiffs submitted in the Foreclosure Action, causing Defendants to reach an incorrect decision and enter an improper foreclosure summary judgment. *Id*. at 9-11.

The "5th Fraud - Sovereign Plaintiffs' challenge of jurisdiction" is based on Plaintiffs' contention that Defendants Spencer and Spong ignored Plaintiffs' jurisdictional challenge in the Foreclosure Action, thereby rendering an "'unlawful, therefore not genuine' judgment" for plaintiff in the Foreclosure Action. *Id.* at 11. Plaintiffs submit they are not subject to a non-judicial court proceeding such as was conducted by Defendant Spong, a referee whom Defendant Spencer appointed to consider the summary judgment motion filed in the foreclosure action. Rather, Plaintiffs argue they were entitled to a jury trial and a full court proceeding. *Id*. at 11-13. Plaintiffs argue that the judgment for the plaintiffs in the Foreclosure Action should be vacated based on lack of jurisdiction in the non-judicial proceedings. *Id.*

Plaintiffs characterize yet another fraud—the "6th Fraud - Multiple attempts to obtain the court reporter's contact information"—explaining such attempts were ignored and thwarted. Am. Compl. 13. Plaintiffs made "five unsuccessful attempts" to obtain the court reporter's information.

The final and "7th Fraud - Fraud by officers of the court," includes allegations of wrongdoing

and "ex parte" behavior of opposing counsel Defendant Spong concerning the appointment of special referee, Defendant Spencer, for the Foreclosure Action without obtaining consent from M. Parker. *Id*. at 13-15. Plaintiffs submit the fraud and wrongdoing violated Plaintiffs' "Constitutional Rights and Liberties." *Id.* at 15.

The remainder of the "Facts" section of the Amended Complaint includes additional detailed statements about Defendants' alleged wrongdoing that was referenced in the "Frauds" discussed above. *Id*. at 16-21. These details include specific discussion of alleged issues with the Special Referee's Deed that was issued as a result of the Foreclosure Action, *id.* at 15-16; claims that the state court abused its discretion by not conducting an evidentiary hearing, *id.* at 16-18; and complaints that Defendant Spong and Defendant Robinson, McFadden, and Moore, P.C. (the law firm representing the plaintiff in the Foreclosure Action) failed to comply with the South Carolina Rules of Civil Procedure, *id.* at 18-19. Plaintiffs also submit that, although M. Parker filed a Notice of Appeal in the Foreclosure Action, Defendant Green Tree forcibly entered the foreclosed property and removed Plaintiffs' personal items that were in the home. *Id.* at 20-21. Plaintiffs submit that such actions violated South Carolina law. *Id.* at 21.

Plaintiffs incorporate all factual allegations into the "Federal Causes of Action" section of the Amended Complaint, in which they assert seven causes of action against each of the six Defendants. *Id.* at 22-23. Plaintiffs set out separate causes of action against each Defendant and include an additional cause of action against Defendant Spong. Essentially, the allegations in these causes of action are that Defendants violated Plaintiffs' "individual rights as protected by the Constitution" when they either personally or vicariously opposed Plaintiffs' positions regarding discharge of the mortgage debt, participated as opposing parties or judges in the referee proceeding,

and/or requested, acquiesced in, or benefitted from the allegedly improper Chesterfield County judgment in the Foreclosure Action that was entered against M. Parker. *Id*. 22-23.

Plaintiffs allege that they have suffered emotional stress because of Defendants' actions "to assist deceitful lenders with foreclosing on the Plaintiffs' home." *Id*. at 23. Plaintiffs then request that "this court will please write out jurisdictional remedies against the Defendants pursuant to applicable United States Codes for damages, jointly and severally, per violation, per count, per person and per entity; Punitive damages as it pleases the court." *Id*. In addition to the Amended Complaint, Plaintiffs filed almost two hundred pages of documents from the state Foreclosure Action (ECF No. 10), as well as personal affidavits in support of their civil rights action, which are attached to the Amended Complaint. Am. Compl. 26-44, ECF No. 22.

Other than referencing general rights pursuant to the Constitution, Plaintiffs do not cite to any specific federal statutes or laws in their "FACTS" or "relief" sections. The court interprets Plaintiffs' mention of 42 U.S.C. §§ 1983, 1985, 1986, and 1988 at the beginning of their Amended Complaint, Am. Compl. 1-2, to indicate they intend to bring their federal causes of action pursuant to those statutes. Accordingly, because no other potential federal laws appear to be involved on the face of the pleading, this Report analyzes Plaintiff's allegations against Defendants to determine whether or not any plausible claims are stated under those statutes.

## II.   ANALYSIS

### A.   42 U.S.C. § 1983

Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731-32 (1989). The purpose of § 1983

is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citation omitted). To state a plausible cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) the defendant(s) deprived him or her of a federal right, and (2) did so under color of state law. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see also Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980). Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes "state action." *See, e.g.*, *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). To qualify as state action, the conduct in question "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and "the party charged with the [conduct] must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 457 U.S. 922, 937 (1982); *see United States v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen Helpers of Am., AFL-CIO*, 941 F.2d 1292 (2d Cir. 1991). Purely private conduct—no matter how wrongful, injurious, fraudulent, or discriminatory—is not actionable under 42 U.S.C. § 1983 or under the Fourteenth Amendment, which are the two most common provisions under which persons come into federal court to claim that others have violated their constitutional rights. *See Lugar*, 457 U.S. at 936; *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 721 (1961).

In this case, only two Defendants conceivably could be considered state actors for purposes of § 1983 actions: Defendants Baxley and Spencer, both involved judicially in the Chesterfield County Foreclosure Action. Defendant Baxley, an elected judge in the State of South Carolina, has judicial immunity from Plaintiffs' claims for damages in this case; Referee Spencer has quasi-

judicial immunity from such claims. It is well settled that judges have absolute immunity from a claim for damages arising out of their judicial actions unless they acted in the complete absence of all jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 351-64 (1978). Whether an act is judicial or non-judicial relates to the nature of the act, such as whether it is a function normally performed by a judge and whether the parties dealt with the judge in his or her judicial capacity. *Mireles*, 502 U.S. at 12. Immunity applies even when the judge's acts were in error, malicious, or in excess of authority. *Id.* at 12-13. The doctrine of absolute quasi-judicial immunity has been adopted and made applicable to court support personnel such as Defendant Spencer, who agreed to serve as a referee in the Foreclosure Action, because of "the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts[.]'" *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992) (quoting *Scruggs v. Moellering*, 870 F.2d 376, 377 (7th Cir. 1989)); *see also Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir. 1980) (collecting cases on immunity of court support personnel). Private attorneys serving as trustees in Bankruptcy Court, have been held entitled to quasi-judicial immunity for actions taken in connection with their court-related duties. *See Balser v. Dep't of Justice, Office of the U. S.Trustee*, 327 F.3d 903, 909 (9th Cir. 2003). Those duties of trustees are similar to those of attorneys serving as referees in state court foreclosure matters.

Accordingly, even though Defendant Spencer may not be a regular employee of the unified judicial system of the State of South Carolina, he has quasi-judicial immunity because he was carrying out the orders/duties of Judges Baxley and Spong in the foreclosure case. *See Mayes v. Wheaton*, No. 97 C 8072, 1999 WL 1000510, * 7 (N.D. Ill., Nov. 1, 1999) ("Judicial immunity

extends to all persons performing judicial and quasi-judicial functions, as well as those acting under the orders, or at the discretion, of a judicial officer.") ( *citing Forrester v. White*, 484 U.S. 219, 226-27 (1988)).

Plaintiffs' allegations against Baxley and Spencer are that they used state law and state court procedures against Plaintiffs and ruled against them in the Foreclosure Action. Plaintiffs also allege that Judge Baxley's application of the state procedure that allowed the appointment of a referee (as opposed to an elected judge) to conduct the foreclosure proceedings and his refusal to hold a hearing on their "Rule 38" motion violated their alleged right to a jury trial and other court-related rights. While Plaintiffs' assert that the foreclosure referee proceeding was conducted without jurisdiction, there is nothing in the Amended Complaint other than Plaintiffs' assertions to support that contention. None of these allegations presents a plausible § 1983 claim against Judge Baxley or Referee Spencer because they are based on actions that these Defendants took in connection with and in furtherance of their judicial responsibilities and duties. Regardless of whether they applied the law correctly or whether Plaintiffs agree with the outcome of the state proceedings, Baxley and Spencer were acting as judges when they did what Plaintiffs disagree with, and, even though Plaintiffs believe that their rights were violated when their property was foreclosed on, neither Baxley nor Spencer can be held liable to either Plaintiff under § 1983 for damages because they are immune from suit.

No §1983 action will lie against the other Defendants—Spong; Green Tree; Walter Mortgage; or Robinson McFadden & Moore, P.C.—because they are private individuals or entities. They are not state actors, so the activities alleged against them (entry into a mortgage relationship with Plaintiffs and participation in a state foreclosure action) are not such as would make their

actions "'fairly attributable' to the state." *Montano v. Hedgepeth*, 120 F.3d 844, 848-49 (8th Cir. 1997) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). Whether the action of a private individual or a corporation rises to the level of state action necessarily depends on the relationship between the activity and the state. The inquiry involves "whether there is a sufficiently close nexus between the State and the challenged action . . . so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). In *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982), the Supreme Court held that a state is responsible for private action only when it has exercised "coercive power" or has provided "significant encouragement" in the implementation of the action. It is also well settled that "a private person does not act under color of state law simply because he invokes state authority." *Brummett v. Camble*, 946 F.2d 1178, 1184 (5th Cir. 1991). The mere fact that private citizens (including private business entities) act as opposing parties and counsel and assert their respective legal positions in state court litigation does not make their actions in connection with the state litigation "state action." *See Dist. 28, U.M.W.A. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1086-87 (4th Cir. 1979).

Plaintiffs' allegations of wrongdoing against the private Defendants are all based on Defendants' refusal to agree with the way that Plaintiffs attempted to satisfy a mortgage and, their pursuit of a foreclosure suit concerning the outstanding debt in a South Carolina state court. Nothing in these allegations attribute any of these actions or activities to encouragement from the state or to anything other than the Defendants' desire to get their money or Plaintiffs' property, which was the collateral for the loan. Accordingly, even if Plaintiffs believe that some of the private Defendants' actions infringed upon their "rights" as "sovereign citizens," *see supra* note 2, no state action was involved and, thus, no plausible § 1983 claim for damages is stated against Defendants Spong,

12

Green Tree Servicing LLC; Walter Mortgage Company LLC; or Robinson, McFadden & Moore, P.C.

### B. 42 U.S.C. § 1985

Plaintiffs also assert that they are entitled to damages pursuant to 42 U.S.C. § 1985, which provides a cause of action for conspiracy to deprive an individual of civil rights, and states in relevant part:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). In *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the Court clarified that the reach of § 1985(3) is limited to private conspiracies predicated on "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Id*. at 102. In *Simmons v. Poe*, 47 F.3d 1370 (4th Cir. 1995), the Fourth Circuit Court of Appeals observed that:

> The law is well settled that to establish a sufficient cause of action for "conspiracy to deny equal protection of the laws" under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

47 F.3d at 1376 (citing *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985)); *see also David v. Hudgins*, 896 F. Supp. 561, 571 (E.D. Va. 1995). Because Plaintiffs' Amended Complaint contains no allegations of race-, religion-, or class-based animus by Defendants, the pleading fails to state

13

a plausible claim against any Defendant under § 1985.

### C. 42 U.S.C. § 1986

Plaintiffs also cite to 42 U.S.C. § 1986 as a basis for their contentions; that statute creates a right to recover damages against "every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed . . . which such person by reasonable diligence could have prevented." 42 U.S.C. § 1986. By the terms of the statute, a claim under § 1986 is dependent on a valid claim under § 1985. *See Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985) ("A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985."). As discussed above, because Plaintiffs have raised no allegations of racial animus or other types of prohibited discriminatory intent in connection with Defendants' activities, they have stated no plausible § 1985 claim against any Defendant. The insufficiency of Plaintiffs' § 1985 claim renders insufficient their § 1986 claim. Because the § 1985 claim fails to state a claim, the § 1986 claim fails as well. *Farese v. Scherer*, 342 F.3d 1223, 1232 n.12 (11th Cir. 2003).

### D. 42 U.S.C. § 1988

Plaintiffs also cite to § 1988, which is the statute allowing recovery of attorney fees for a successful claim under any of the other civil rights statutes cited: §§ 1983, 1985, or 1986, as well as under other civil rights-type statutes not involved here. The statute permits a court to award "a reasonable attorney's fee" to "the prevailing party" as long as it is not the United States and as long as such a fee is not barred by judicial immunity. As Plaintiffs are proceeding pro se, they would not

be able to recover attorneys' fees pursuant to § 1988 even if they were to "prevail" on a civil rights claim brought herein. *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (noting pro se litigants not entitled to such fees). In addition, Plaintiffs fail to state plausible claims under any of the statutes they cite, thus they cannot be said to be "prevailing parties" in this case and no attorney's fee award could be due them.

  E. *Rooker-Feldman* **Doctrine**

The allegations in the Amended Complaint in this case are reminiscent of those contained in the recent case of *Hardwick v. Bank of America, N.A.*, No. 4:12-1286-RBH-KDW, 2013 WL 807256, * 4-5 (Jan. 29, 2013), *adopted by* 2013 WL 806676 (D.S.C. Mar. 5, 2013), in which the court found the plaintiff's claims arising from a previous state mortgage foreclosure action to be barred by the *Rooker-Feldman* Doctrine.

To the extent Plaintiffs' Amended Complaint may be construed as an attempt to re-litigate the state foreclosure and related proceedings or seek review of them by this court, summary dismissal of this case is appropriate pursuant to the *Rooker-Feldman* Doctrine. This Doctrine, based on the two United States Supreme Court cases of *Rooker v. Fiduciary Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), is jurisdictional, so the court may raise it sua sponte. *See Friedman's Inc. v. Dunlap*, 290 F.3d 191, 165-96 (4th Cir. 2002). According to the Fourth Circuit, "the *Rooker-Feldman* doctrine applies . . . when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006).

Plaintiffs' submission of the Amended Complaint in this case, claiming a right to damages

15

for alleged federal constitutional violations by various court personnel, opposing counsel, and opposing parties in the state Foreclosure Action does not alter the fact that they are, in reality, attempting to have this court review the proceedings that took place before the Chesterfield County Common Pleas Court. *See Anderson v. Colorado*, 793 F.2d 262, 263 (10th Cir. 1986) ("[I]t is well settled that federal district courts are without authority to review state court judgments where the relief sought is in the nature of appellate review."); *see also Hagerty v. Succession of Clement*, 749 F.2d 217, 219-20 (5th Cir. 1984) (collecting cases). Here, Plaintiffs are claiming injuries arising directly from the state court decisions in the Foreclosure Action, and to rule in their favor[3] on their constitutional claims would, necessarily, require this court to overrule or otherwise find invalid various orders and rulings made in the Chesterfield County Common Pleas Court. Such a result is prohibited under the *Rooker-Feldman* Doctrine, and Plaintiffs' Amended Complaint could be summarily dismissed for this reason alone even if the civil rights claims were otherwise plausible. *Davani*, 434 F.3d at 719-20; *see Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293-94 (2005); *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 201 (4th Cir. 1997).

  **F.**  **Supplemental Jurisdiction**

Finally, in the event the District Court dismisses Plaintiffs' purported civil rights claims as recommended, to the extent that Plaintiffs' Amended Complaint can be liberally construed to set forth additional claims for relief under any state common law theory, the undersigned recommends any such claims be dismissed. The court "may decline to exercise supplemental jurisdiction" over such claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Therefore, it is recommended that the court not exercise supplemental

---

[3]As discussed within, the court finds Plaintiffs' claims to be without potential merit.

jurisdiction in this case.

### III. RECOMMENDATION

Accordingly, it is recommended that the District Court dismiss the Amended Complaint in this case *without prejudice*. *See United Mine Workers v. Gibbs,* 383 U.S. 715 (1966); *see also Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989).

IT IS SO RECOMMENDED.

October 18, 2013  Kaymani D. West
Florence, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).